IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTIN S. B.,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | ) No. 23 C 281 |
| v. | ) |
| | ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting | ) Maria Valdez |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Kristin S. B.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 12] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

# BACKGROUND

## I. PROCEDURAL HISTORY

On February 4, 2016, Plaintiff filed a claim for DIB, alleging disability since August 3, 2015 (as amended). Following a hearing, an Administrative Law Judge ("ALJ") denied Plaintiff's claim for benefits on April 23, 2018, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council remanded the matter, and on June 30, 2020, an ALJ again denied Plaintiff's claim. The Appeals Council then remanded the case again, and on June 25, 2021, the ALJ again denied Plaintiff's claim. The Appeals Council then remanded the matter yet again, and the ALJ conducted a further telephonic hearing on February 17, 2022. Plaintiff appeared and testified at the hearing and was represented by counsel. A medical expert ("ME") and a vocational expert ("VE") also testified.

On June 2, 2022, the ALJ denied Plaintiff's claim for benefits a fourth time, finding her not disabled under the Act. The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's June 2, 2022 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.     ALJ DECISION

In the ALJ's June 2, 2022 decision, Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff did not engage in substantial gainful activity during the period from her amended alleged onset date of August 3, 2015 through her date last insured of December 31, 2018. At step two, the ALJ concluded that Plaintiff had the following severe impairments: right cubital tunnel syndrome; right carpal tunnel syndrome; history of traumatic brain injury with recurrent headaches; obesity; depression; anxiety; and post-traumatic stress disorder. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: could never crawl nor climb ladders, ropes, or scaffolds; could frequently climb ramps or stairs, balance, stoop, crouch, and kneel; could frequently reach, handle objects (gross manipulation), and finger (fine manipulations) bilaterally; needed to avoid concentrated exposure to strobing or flashing lights; needed to avoid noise louder than that which would be experienced in a factory setting; needed to avoid concentrated exposure to vibrations; needed to avoid concentrated exposure to dangerous moving machinery; needed to avoid all exposure to unprotected heights; was limited to simple and routine tasks; and could tolerate no interactions with the

3

public in the work setting, including but not limited to interactions with the public in the work setting while present in a crowd. At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a special education teacher, daycare teacher, industrial truck operator, mechanic, material handler, medical supply administrative clerk, or roll forming machine operator. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she was not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

4

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.  JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019)

(citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ's RFC finding was not supported by substantial evidence; (2) the ALJ did not properly evaluate the opinion of Plaintiff's treating nurse practitioner; and (3) the ALJ did not properly evaluate Plaintiff's symptoms. Each argument will be addressed below in turn.

#### A. The ALJ's RFC Determination Concerning Migraine Headaches

In advancing her first argument, Plaintiff contends that the ALJ's RFC assessment vis-à-vis Plaintiff's migraine headaches was inadequate. Pertinent to that argument, as stated above, the ALJ determined that Plaintiff's headaches constituted a severe impairment. Related to that finding, the ALJ specified in the RFC that Plaintiff needed "to avoid concentrated exposure to strobing or flashing lights," needed "to avoid noise louder than that which would be experienced in a factory setting," and needed "to avoid concentrated exposure to vibrations." (R. 24.)

Plaintiff asserts that the ALJ did not provide the requisite "narrative discussion" and "detailed explanation" concerning these RFC accommodations. (Pl.'s

7

Br. at 5.) However, the ALJ addressed Plaintiff's migraines in a detailed manner throughout his 33-page decision. In one particular passage pertinent to the ALJ's RFC accommodations, the ALJ noted that Plaintiff engaged in wide-ranging activities, including attending classes, volunteering at a daycare facility, attending baseball games, and traveling out of state. The ALJ then reasoned as follows:

> The undersigned notes that partaking in any one particular activity or undertaking certain caregiving duties, would not, in and of itself, equate to the claimant's ability to work on a regular and continuous basis. However, this record includes several notations to varied and significant responsibilities and activities, which were undertaken by the claimant contemporaneous to her reports of debilitating symptoms. Accordingly, the undersigned concludes that the claimant's assertions regarding the frequency and severity of her headaches and their impact on her overall functioning are not corroborated by the record. Nevertheless, the undersigned has considered the claimant's history of migraines and associated symptoms, including photophobia, phonophobia, and vomiting, on occasion, by finding that the claimant must avoid concentrated exposure to strobing or flashing lights, noise louder than that which would be experienced in a factory setting, and vibration. In addition, the claimant must avoid concentrated exposure to dangerous moving machinery and must avoid all exposure to unprotected heights.

(R. 35-36.)

Based on this passage and the ALJ's overall migraine analysis, the Court finds that the ALJ built the requisite logical bridge and reasonably concluded – giving Plaintiff the benefit of the doubt – that common migraine-related RFC limitations were sufficient to accommodate Plaintiff in this case. *See Dana C. v. Kijakazi*, No. 20-CV-3671, 2023 WL 2711598, at *7 (N.D. Ill. Mar. 30, 2023). The Court must decline Plaintiff's invitation to reweigh the evidence in relation to her migraines, as that is an endeavor the Court cannot undertake. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). The Court also rejects Plaintiff's argument that

the ALJ was essentially "playing doctor" in an impermissible manner, as the ALJ appropriately considered and weighed the medical evidence in relation to Plaintiff's migraines. *See Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 886-87 (N.D. Ill. 2003) ("Our review of the record indicates that the ALJ was not 'playing doctor,' but performing his duty to consider and weigh the evidence."). Lastly, the Court rejects Plaintiff's contention that the ALJ should have "recontact[ed] the treating sources." (Pl.'s Br. at 9.) "[T]he ALJ was only required to recontact a medical source . . . if the evidence received [was] inadequate to determine whether the claimant is disabled." *Vincent A. v. Berryhill*, No. 16 C 7136, 2019 U.S. Dist. LEXIS 80484, at *16 (N.D. Ill. May 13, 2019) (citation and internal quotations omitted). The extensive medical record in this case provided a sufficient basis for the ALJ's determinations concerning Plaintiff's migraines.

### B. The ALJ's Consideration of the Nurse Practitioner's Opinion

For her second argument, Plaintiff contends that the ALJ did not properly evaluate the opinion of her nurse practitioner, Brooke Keenan. Pertinent to that argument, the ALJ assessed Nurse Keenan's opinion as follows:

> On December 21, 2017, nurse practitioner, Ms. Brooke Keenan, opined that the claimant would be precluded from performing even basic work activities and would need a break from the workplace during times she had a headache. She also opined that the claimant would sometimes need to take unscheduled breaks during an 8-hour work shift "on increased headache days, frequently, hourly" and that she would be absent from work more than four days per month. The undersigned gives no weight to Ms. Keenan's opinion for several reasons. First, Ms. Keenan did not cite to specific treatment notes or objective findings to support or provide an underlying clinical basis for why the claimant would be absent on such a frequent basis. Furthermore, Ms. Keenan noted that the claimant has had "multiple medication trials without

9

> improvement" but did not reconcile this with evidence in the record that shows the claimant declined medication trials on several occasions. She also inconsistently noted that medication (Sumatriptan) made the claimant's headaches better suggesting that medication has provided some improvement in symptoms. In addition, Ms. Keenan failed to address the claimant's non-compliance with other prescribed headache therapies, like the claimant stopping medications on her own accord, taking large dosages of Ibuprofen against medical [advice], or using prescribed medications/treatment inconsistently or in a manner other than directed.

(R. 37-38 (citations omitted).)

A nurse practitioner "is not an 'acceptable medical source' under the regulations governing claims filed prior to March 27, 2017." *Dallas E. H. v. Kijakazi*, No. 20 C 2717, 2021 WL 4635802, at *7 (N.D. Ill. Oct. 7, 2021) (citations omitted). While an ALJ "may still consider evidence from other sources, such as therapists, social workers, nurse practitioners, or physician assistants," she is only "required to minimally articular her reasons for rejecting [a nurse practitioner's] opinion." *Id.* (citations omitted). Per the above-quoted passage, the ALJ discounted Nurse Keenan's opinion for multiple reasons, including because Nurse Keenan's opinion was not supported by treatment notes, was inconsistent with Plaintiff's treatment decision, and was inconsistent with improvement Plaintiff had experienced. As such, the Court finds that the ALJ sufficiently articulated her reasons for rejecting Nurse Keenan's opinion. *See Bond v. Berryhill*, No. 16 C 2018, 2017 WL 1398656, at *4 (N.D. Ill. Apr. 18, 2017) ("An ALJ is not required to give controlling weight to a non-acceptable medical source, such as a nurse practitioner, but must assign such opinion a weight and evaluate it as part of her determination of impairment severity and functional limitations. In this case, the ALJ sufficiently

10

explained why she discounted the opinion of the nurse practitioner."); *Dallas E. H.*, 2021 WL 4635802 at *8 ("The ALJ gave several valid reasons supported by record evidence for discounting [the nurse practitioner's] opinions regard Dallas's mental impairments, including that they were not adequately supported by his own treatment notes, Dallas's treatment history, and other evidence in the record. . . . The Court finds that the ALJ's assignment of little weight to NP Wood's opinions is supported by more than a mere scintilla of evidence."); *Janisha C. v. Kijakazi*, No. 22-CV-00381, 2023 WL 5017943, at *5 (N.D. Ill. Aug. 7, 2023) ("Here, the Court finds that the ALJ appropriately reasoned that the nurse practitioner's evaluation was not consistent with the medical evidence or even Plaintiff's own testimony.").

  **C.** **The ALJ's Assessment of Plaintiff's Subjective Symptoms**

For her third argument, Plaintiff contends that the ALJ's evaluation of her subjective symptoms is deficient. Pertinent to that argument, this Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted).

Plaintiff argues in particular that "the ALJ improperly concluded that there were inconsistencies regarding" Plaintiff's activities including "volunteering, travel and attending sporting events." (Pl.'s Br. at 14.) In assessing Plaintiff's symptoms, the ALJ stated as follows with respect to Plaintiff's activities:

11

> The evidence of record reflects that the claimant took part in considerably more activities than suggested by her testimony. For instance, the claimant testified that she attended classes to get certified in early childhood training but did not complete the program due to headaches. Yet, the record reflects that the claimant was able to obtain her certification in early childhood training. The claimant alleged that she would volunteer, but often for brief periods of time before having to leave due to headaches. Nevertheless, she would often cancel or not show up for mental health appointments because of her time volunteering at a daycare facility. Even when reporting significant psychosocial stress, the claimant declined re-referral to therapy because she had too much going on/too busy with other responsibilities. Despite her subjective complaints of difficulties being in crowds, and being sensitive to lights and sounds, the claimant was able to volunteer at a daycare facility, attend professional baseball games, travel on a family trip to Orlando, and go to Great America, all of which are settings that are loud and can be well-lit. At her hearings, the claimant attempted to minimize such activities, but the references in treatment records fail to support such claims. For example, there is no mention of the attendance of baseball games or her volunteer work as being as restrictive or infrequent as later alleged. Because of these inconsistencies, it is difficult to separate what the claimant's activities were and the extent of her limitations in functioning, even though the burden is on the claimant to show this convincingly.

(R. 35 (citations omitted).)

The Court finds that the ALJ reasonably determined that Plaintiff's allegations were not fully corroborated based, in part, on Plaintiff's wide-ranging activities. *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's

12

rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms."). In assessing Plaintiff's activities, the ALJ did not improperly equate those activities with an ability to work full time. Rather, the ALJ appropriately read into Plaintiff's extensive activities that she was not as restricted as alleged.

In attacking the ALJ's symptom analysis, Plaintiff also nitpicks the ALJ's decision and raises squabbles regarding Plaintiff's treatment modalities and oxygen use. However, the ALJ rendered a well-reasoned decision that is 33 pages long. The Court will not nitpick the ALJ's decision so as to require perfection, as that is not the applicable standard. *See Brenda L. v. Saul*, 392 F. Supp. 3d 858, 871 (N.D. Ill. 2019) ("The ALJ's decision may not be perfect, but it need not be.") (citations omitted); *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) ("Rather than nitpick the ALJ's opinion for inconsistencies or contradictions, we give it a commonsensical reading.") (citation omitted). And, ultimately, Plaintiff has not shown that the ALJ's evaluation of her subjective symptoms was "patently wrong," as was Plaintiff's burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018).

13

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 12] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 15] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:** __**October 19, 2023**__  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**